**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BIBBS, | ) | CASE NO. 1:23-cv-1968 |
| | ) | |
| Plaintiff, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| v. | ) | |
| | ) | |
| ALLSTATE INSURANCE COMPANY, *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | |

Before the Court is Defendants' Motion to Dismiss or Stay Action Based on Mandatory, Binding Appraisal and Failure to State a Claim ("Motion to Dismiss"). (ECF No. 11). Plaintiff filed a timely opposition, (ECF No. 12), and Defendants filed a reply in support of the Motion, (ECF No. 13). For the reasons discussed below, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, to the extent that: (i) the request to compel appraisal is **GRANTED**; (ii) Counts II, III, and IV are **DISMISSED**; (iii) Defendant Allstate Insurance Company is **DISMISSED** as a defendant.; and (iv) the case is **STAYED** pending completion of the appraisal.

## I.    PROCEDURAL BACKGROUND

On August 25, 2023, Plaintiff John Bibbs filed a class action complaint, individually and on behalf of all others similarly situated, against Defendants Allstate Insurance Company ("AIC") and Allstate Fire & Casualty Ins. Co. ("AFCIC"), alleging that Defendants arbitrarily and unlawfully deducted a "condition adjustment" from the actual cash value of a vehicle loss when paying insurance claims to their customers. (ECF No. 1-2). The case was originally filed in Cuyahoga County Common Pleas Court. (*Id.*). The complaint asserts four causes of action: (i) Breach of Contract (Count I); (ii) Unjust Enrichment (Count II); (iii) Fraud by Present Intent

1

Not to Perform (Count III); and (iv) Fraud and Fraudulent/Negligent Misrepresentation and Omission (Count IV).[1]  (*Id.* at PageID #37–44).

On October 6, 2023, Defendants removed the action to this Court, pursuant to the Class Action Fairness Act (28 U.S.C. § 1332(d)).  (ECF No. 1).  On November 3, 2023, Defendants filed the Motion to Dismiss.  (ECF No. 11).  Defendants argued that: (i) AIC was not a proper defendant and should be dismissed; (ii) the Court should compel appraisal and either dismiss or stay the action; (iii) Plaintiff failed to sufficiently state a claim for relief in Counts I through IV; (iv) Plaintiff failed to satisfy the heightened pleading requirements under Rule 9(b) to sustain his claims for fraud in Counts III and IV; (v) Counts III and IV are barred by the economic loss doctrine; and (vi) Plaintiff's class definition is overly broad and asserts claims that are time-barred.  (*Id.* at PageID #154–67).  Plaintiff filed a timely opposition, (ECF No. 12), and Defendants filed a reply in support of the Motion to Dismiss, (ECF No. 13).

## II.  FACTUAL BACKGROUND

### A.    Plaintiff's Insurance Policy and Total Loss Calculation[2]

Plaintiff was insured under a policy issued by Defendants[3] for a vehicle garaged in Ohio (the "Policy").  (ECF No. 1-2, ¶¶ 105–06; *id.* at PageID #47–80).  The Policy provided coverage for a total loss of the policyholder's listed, insured vehicle.  (*Id.* ¶ 107).  Under the Policy, the payment for a total loss was limited to either: (i) the actual cash value ("ACV") of the vehicle, minus a deductible for depreciation; or (ii) the cost to repair or replace the vehicle.  (*Id.* ¶ 108; *id.*

---

[1] The complaint mistakenly labels two counts as "Count III."  (*See* ECF No. 1-2, PageID #41–42).  The Court will refer to Plaintiff's fourth cause of action—his claim for Fraud and Fraudulent/Negligent Misrepresentation and Omission—as Count Four.

[2] The factual allegations that follow are contained within Plaintiff's complaint and its attached exhibits: (i) Plaintiff's insurance policy with Defendants; and (ii) the relevant market valuation of Plaintiff's vehicle.  (ECF No. 1-2).

[3] Throughout the complaint, Plaintiff asserts factual allegations against "Defendant" without specifying or clarifying which of the two defendants.  The Court assumes that the factual allegations are being made collectively against the Defendants.

at PageID #62).  The Policy did not define the term ACV and made no mention of a "condition adjustment."  (*Id.* ¶¶ 109–10).

Plaintiff filed an insurance claim in September 2022 for damage to his insured vehicle.  (*Id.* ¶ 116; *id.* at PageID #81).  Defendants determined that Plaintiff's vehicle was a total loss and they owed Plaintiff the ACV of the vehicle at the time of the loss.  (*Id.* ¶ 117).  To process Plaintiff's claim, Defendants used the "CCC One system" (the "CCC Program") to calculate the vehicle's ACV and generated a "CCC One Market Valuation" (the "Market Valuation").  (*Id.* ¶¶ 118–19; *id.* at PageID #81–87).  The CCC Program calculated the ACV of Plaintiff's vehicle by averaging the value of comparable vehicles to arrive at a "base vehicle value" and then adjusting for the condition of Plaintiff's vehicle.  (*Id.* ¶ 120; *id.* at PageID #81).  Plaintiff's Market Valuation states that the "base vehicle value" is "the weighted average of the adjusted values of the comparable vehicles based on the following factors: Source of the data (such as inspected versus advertised); Similarity (such as equipment, mileage, and year); Proximity to the loss vehicle's primary garage location; Recency of information."  (*Id.* ¶ 123; *id.* at PageID #82).  The Market Valuation then states that the base vehicle value was further reduced by another factor labeled as a "condition adjustment."  (*Id.* ¶¶ 121, 124).  The Market Valuation specifically states that "[a] condition adjustment is also made to set the comparable vehicle to Private Owner condition, which the loss vehicle is also compared to in the Vehicle Condition section."  (*Id.* at PageID #87).

Plaintiff alleges that this "condition adjustment" for comparable vehicles resulted in Defendants paying Plaintiff less than the ACV of his vehicle, in violation of the Policy; he clarifies that he is only challenging the Defendants' use of the "condition adjustment" to determine the total loss of a damaged vehicle.  (*Id.* ¶¶ 120–21, 126).  The Market Valuation

determined the total payout for Plaintiff's vehicle to be $16,288.00, which was based on: (i) a base vehicle value of $15,730.00; (ii) a condition adjustment for the loss vehicle of -$205.00; (iii) adding $1,263.00 for vehicular tax, title, registration, and other fees; and (iv) subtracting a $500 deductible.  (*Id.* at PageID #81).

### B.    The Policy's Appraisal Provision

The Policy provides that AFCIC and Plaintiff have the right to demand an appraisal of the calculated loss amount when the parties disagree as to the amount of loss.  (*Id.* at PageID #61).  The Policy provides the following language regarding such appraisals under a section labeled "Right to Appraisal":

> Both you and we have a right to demand an appraisal of the loss.  Each will appoint and pay a qualified appraiser.  Other appraisal expenses will be shared equally.  The two appraisers, or a judge of a court of record, will select an umpire.  Each appraiser will state the actual cash value and the amount of loss.  If the appraisers disagree, they'll submit their differences to the umpire.  A written agreement by any two of these three persons will determine the amount of the loss.

(*Id.* at PageID #61–62).  In October 2023, AFCIC submitted a written request to Plaintiff, demanding an appraisal pursuant to the terms of the Policy.  (ECF No. 11-1, PageID #170–71).

## III.    DISCUSSION

The Court will first address Defendants' arguments for dismissal for lack of standing and failure to state a claim under Rules 12(b)(6) and 9(b).  The Court will then address Defendants' request to compel appraisal and either dismiss or stay this action.

### A.    Motion to Dismiss Pursuant to Rule 12(b)(6) and Rule 9(b)

#### 1.    *Standard of Review*

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  Rule 8(a)(2) provides that the complaint should contain a short and plain statement of the claim, but that it should be more than a "the-defendant-unlawfully-harmed-me" accusation.  *Id.* at 677–78 (citing *Twombly*, 550 U.S. at 555).  A plaintiff is obligated to provide sufficient grounds to show entitlement to relief; "labels, conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)).  Although a complaint need not contain detailed factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true."  *Id.*  When reviewing a complaint, a court must construe the pleading in the light most favorable to the plaintiff.  *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

When deciding a motion to dismiss under Rule 12(b)(6) or Rule 12(c), as a general rule, the court cannot consider matters outside the pleadings, unless the motion is converted to a motion for summary judgment under Rule 56.  *See* Fed. R. Civ. P. 12(d).  However, the Court may consider exhibits attached to or otherwise incorporated in the complaint without converting a Rule 12(b) motion to dismiss into a motion for summary judgment.  Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

2.    *Dismissal of Allstate Insurance Company as a Defendant*

Defendants argue that AIC is not a proper defendant for Plaintiff's breach of contract claim because it is a not a party to the Policy (AFCIC and Plaintiff are the only signatories and

parties to the Policy) and AIC and AFCIC are separate entities.  (ECF No. 11, PageID #154–55).  Plaintiff essentially concedes that AIC is not a party to the contract.  However, he argues that the complaint sufficiently alleges facts to plausibly support an agency theory of liability for the breach of contract claim as to AIC.  (ECF No. 12, PageID #190–91).  Defendants' reply brief notes that: (i) Plaintiff's opposition brief cites two, non-binding, unpublished cases; and (ii) "the Sixth Circuit ruled on this issue in *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 420 (6th Cir. 2020), and held the plaintiff could not pursue claims against Allstate entities that were not parties to the policy at issue."  (ECF No. 13, PageID #200).

Under Ohio law, a non-party to a contract cannot generally be held liable for its breach.  *See Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2017-Ohio-1462, 81 N.E.3d 499, 503 (Ohio Ct. App. 2017) ("It goes without saying that a contract cannot bind a nonparty." (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002))); *White v. Adena Health Sys.*, No. 2:17-cv-593, 2018 U.S. Dist. LEXIS 114975, at *22 (S.D. Ohio July 11, 2018) (same); *see also Samadder v. DMF of Ohio, Inc.*, 2003-Ohio-5340, 154 Ohio App. 3d 770, 798 N.E.2d 1141, 1147 (Ohio Ct. App. 2003) (However, a contract is binding only upon parties to a contract and those in privity with them.").  "Yet, that general principle does not hold in some cases.  For example, it is possible for a non-party parent company to be liable for a subsidiary's breach, e.g., on an agency, alter ego, or veil-piercing theory."  *Duff v. Centene Corp.*, 565 F. Supp. 3d 1004, 1018 (S.D. Ohio 2021) (citing *Boyd v. Archdiocese of Cincinnati*, No. 25950, 2015-Ohio-1394, ¶ 27 (Ohio Ct. App. 2015) ("The only way that the agreement could be enforced against these nonparties is through a liability theory like assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." (citation and internal quotation marks omitted))).

6

Plaintiff does not argue or allege that AIC is liable under an "alter ego" or "piercing the veil" theory of liability.  There are also no allegations suggesting that AIC abused the corporate form.  Plaintiff only argues that there were sufficient allegations to support an agency theory of liability.  However, the Court finds that the complaint does not sufficiently allege a principal-agent relationship between AIC and AFCIC.

"A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusion of agency." *McWilliams v. S.E., Inc.*, 581 F. Supp. 2d 885, 893 (N.D. Ohio 2008) (quoting *Bird v. Delacruz*, No. 04-CV-661, 2005 U.S. Dist. LEXIS 48388, 2005 WL 1625303, at *4 (S.D. Ohio July 6, 2005) (internal quotation marks omitted).  "While the existence and extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an agency relationship existed in order to survive a Rule 12(b)(6) motion to dismiss." *Id.* (quoting *MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*, 10 F. Supp. 2d 922, 931 (N.D. Ill. 1998)).  "Under Ohio law, the 'primary distinguishing characteristic of an agency relationship is the right of the principal to control the conduct of the agent when the agent is performing work on behalf of the principal.'" *Kendell v. Phoenix Home Health Care Servs.*, No. 2:15-cv-3009, 2016 U.S. Dist. LEXIS 139831, at *10 (S.D. Ohio Oct. 7, 2016) (quoting *Costell v. Toledo Hosp.*, 98 Ohio App. 3d 586, 649 N.E.2d 35, 39 (Ohio Ct. App. 1994)).

The complaint does not provide sufficient allegations to support a principal-agent relationship between AFCIC and AIC.  Plaintiff does not allege any explicit agency agreement between the two defendants.  Plaintiff solely alleges that AFCIC is an underwriter for AIC. (ECF No. 1-2 ¶ 10).  Nowhere in the complaint does he allege that: (i) AIC is the parent company or principal for AFCIC; or (ii) AFCIC is a subsidiary or agent for AIC.  Contrary to

Plaintiff's assertions, the complaint does not allege that all actions were taken by agents of AIC or that AIC operates a "single claims adjusting operation"; instead, the complaint attributes those allegations to "Allstate," which is defined in the complaint as AFCIC and AIC collectively.  (*Id.* ¶¶ 1, 11, 13).  There are no allegations as to: (i) whether AIC directs the operations of AFCIC; (ii) what level of control AIC exerts over AFCIC; or (iii) whether AFCIC entered into the Policy with Plaintiff on behalf of AIC.  The allegations in the complaint, even when taken in the light most favorable to Plaintiff, simply do not establish a principal-agent relationship between AIC and AFCIC.[4]

Accordingly, Plaintiff has failed to state a claim against AIC.  AIC is hereby **DISMISSED** as a defendant from this action **WITHOUT PREJUDICE**.  If Plaintiff wishes to amend the complaint to provide sufficient allegations to add AIC as a proper party defendant, he may file a motion for leave to amend within 30 days of this order.  The motion should attach a proposed amended complaint and provide an explanation as to how it sufficiently alleges standing to assert claims against AIC.

### 3.    Count I – Breach of Contract

Defendants argue that Count I must be dismissed because: (i) the Policy's use of the term ACV unambiguously refers to the market value of Plaintiff's vehicle; and (ii) application of a

---

[4] The analysis in *Duff v. Centene Corp.* is particularly instructive and highlights the insufficiency of the allegations in this case.  In *Duff*, the district court took note of several allegations by the plaintiff concerning the interconnectedness between the defendant parent company and defendant subsidiary, as well as the specific allegations that the defendant parent company controlled the operations of the subsidiary defendant and the two defendants operated in concert and as part of a common enterprise.  *Duff*, 565 F. Supp. 3d at 1018–19.  The *Duff* court found that these allegations were barely sufficient to raise a plausible inference that the defendant parent company was a proper defendant under an alter ego, veil-piercing, or agency theory.  *Id.* at 1019.  The allegations in this case clearly fall short of the barely sufficient allegations presented in *Duff*.

Plaintiff's citation to *See v. GEICO*, No. 21-CV-00547, 2022 U.S. Dist. LEXIS 52647 (E.D.N.Y. Mar. 22, 2022) is unavailing.  (ECF No. 1-2, PageID #190–91).  The amended complaint in *See* contained allegations that detailed the interconnectedness of the parent company and subsidiary (same phone number, website, and physical address).  The amended complaint further asserted that the subsidiary was the only entity registered to do business in New York and both entities signed the policy at issue.  *See*, 2022 U.S. Dist. LEXIS 52647, at *19–21.  This was sufficient to support a theory of agency liability in that case, but such allegations are entirely absent in Plaintiff's complaint.

condition adjustment when determining a vehicle's ACV is not barred under either the Policy or Ohio law. (ECF No. 11, PageID #157–60). Plaintiff responds that he is not challenging the adjustment of his own vehicle's value based on its mileage, options, and condition; he is challenging the process of reducing the value of all comparable vehicles using a uniform "condition adjustment" which is based on assumptions without an actual inspection. (ECF No. 12, PageID #181–82). Plaintiff argues that the condition adjustment used by Defendants to reduce the value of comparable vehicles constitutes a breach of contract because the adjustment is not mentioned in or otherwise permitted under the terms of the Policy; Plaintiff asserts that such a reduction is not an "intrinsic component of a market value calculation" nor is it applied in all markets. (*Id.* at PageID #183–85).

After reviewing the complaint and the parties' briefing, the Court notes that neither side is disputing that the term ACV, as provided in the Policy, refers to the market value of damaged vehicles like those of Plaintiff and the putative class members. Plaintiff is arguing that Defendants breached the contract because the method used by Defendants to calculate the damaged vehicle's ACV did not accurately determine the actual market value of that vehicle. With this in mind, the Court finds that Plaintiff plausibly alleged a breach of contract claim.

"Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012) (citing *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008)). It is undisputed that there is an existing contract (the Policy) and Defendants do not argue that Plaintiff failed to perform under the contract. Defendants instead contend that Plaintiff has not identified a breach of contract or adequately alleged damages. (ECF No. 11, PageID #157–60).

Under the Policy, AFCIC is required to pay Plaintiff either the ACV of the damaged vehicle, which might include a deductible for depreciation, or the cost to repair/replace the damaged vehicle.  (ECF No. 1-2, PageID #62).  Plaintiff alleges that Defendants breached this term of the Policy by paying less than his vehicle's ACV minus a deductible, through the addition of "condition adjustment" under the CCC Program.  (*Id.* ¶ 132).  Plaintiff supports this conclusion by alleging that: (i) Defendants used the CCC Program to determine his vehicle's market value; (ii) when calculating the ACV, the CCC Program reduced the value of comparable vehicles using an improper "condition adjustment"; (iii) such an adjustment is not contemplated in the Policy; (iv) this adjustment resulted in Defendant not paying the ACV as required by the Policy; and (v) it is impossible to determine how Defendants arrived at the condition adjustment because there is no specific data or sufficient explanation regarding the amount of the reduction. (*Id.* ¶¶ 31–33, 50–53, 122–26, 139, 142).

The Market Valuation demonstrates that the base vehicle value for Plaintiff's vehicle was calculated using the weighted average of adjusted values of comparable vehicles.  (ECF No. 1-2, PageID #81–82, 87).  This was further adjusted using a "condition adjustment," which "set the comparable vehicle to Private Owner condition."  (*Id.* at PageID #87).  It appears that applying this condition adjustment reduced the value of the comparable vehicles, which then reduced the base vehicle value and ultimately lowered the total value of Plaintiff's vehicle.

Construing the complaint in a light most favorable to Plaintiff, the factual pleadings plausibly make out a claim that AFCIC breached the Policy by failing to pay Plaintiff the ACV/market value of his vehicle after applying the challenged condition adjustment.  The factual allegations are sufficient to "nudge [Plaintiff's breach of contract] across the line from

conceivable to plausible" based on "judicial experience and common sense." *See Twombly*, 550 U.S. at 570.

The Court further finds that the complaint sufficiently alleged damages to support a breach of contract claim; Plaintiff alleges he suffered damages related to Defendants failing to pay the amount required under the Policy. (ECF No. 1-2, ¶¶ 126–27, 142, 145). In this case, the alleged damages are the amount that the application of the challenged "condition adjustment" reduced the total loss amount calculated for Plaintiff's vehicle. Accordingly, the Motion to Dismiss is **DENIED** as to Count I.

### 4. Count II – Unjust Enrichment

Defendants argue that Plaintiff's claim for unjust enrichment must be dismissed because Plaintiff cannot sustain a claim for unjust enrichment under Ohio law when that claim is premised on a contractual right that is undisputedly governed by the Policy. (ECF No. 11, PageID #161–62). Alternatively, they argue that the unjust enrichment claim also fails because Plaintiff only alleged that he was underpaid by Defendants, which does not sufficiently establish one of the elements for an unjust enrichment claim—that Plaintiff conferred a benefit on Defendants. (*Id.* at PageID #162–63). Plaintiff responds that, although he is not allowed to recover under both a breach of contract and unjust enrichment claim, he is allowed to plead alternative theories of recovery. (ECF No. 12, PageID #185–86). He also argues that he is entitled to restitution under a theory of unjust enrichment because he paid a premium to Defendants who are now withholding funds that rightfully belong to him. (*Id.* at PageID #186–87).

First, Plaintiff is not barred from asserting an alternative claim for unjust enrichment in this case. "Under Ohio law, a plaintiff may not recover under the theory of unjust enrichment

11

when an express contract covers the same subject." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013) (citing *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009)). But the law also provides an exception, such that a plaintiff can maintain a claim for unjust enrichment, even when there is no dispute over the existence of an express contract, when there are allegations of fraud, bad faith, or some illegality. *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 699 (S.D. Ohio 2012) ("A claim for unjust enrichment may be pled in the alternative . . . and may be maintained despite the existence of an express contract where there is evidence of fraud, bad faith, or illegality."); *R.J. Wildner Contracting Co. v. Ohio Tpk. Comm'n*, 913 F. Supp. 1031, 1043 (N.D. Ohio 1996); *see also Cristino v. Ohio Bur. Of Workers' Comp.*, 977 N.E.2d 742, 753 (Ohio Ct. App. 2012) ("The existence of an express contract precludes an unjust-enrichment claim only in the absence of bad faith, fraud, or some other illegality." (citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St. 3d 51, 55, 544 N.E.2d 920 (Ohio 1989)). To trigger this exception, the alleged bad faith or fraud must have occurred during the formation of the contract. *R.J. Wildner Contracting Co.*, 913 F. Supp. at 1043.

Under Counts III and IV, Plaintiff alleges bad faith and fraud in the formation of the contract between Plaintiff and Defendants, asserting that AFCIC: (i) entered into the agreement with an intent not to perform certain obligations; (ii) intentionally created a vague definition for "actual case value"; and (iii) intentionally failed to disclose material information in its policies, as well as its intention to apply a condition adjustment. At this stage of the proceeding, the Court finds these allegations are sufficient to trigger the exception and allow Plaintiff to alternatively plead a claim for unjust enrichment.

However, Plaintiff has failed to sufficiently plead the claim.  Under Ohio law, there are three elements for a claim of unjust enrichment: "(1) a benefit conferred on a defendant by a plaintiff; (2) the defendant's knowledge of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Cook v. Ohio Nat'l Life Co.*, 961 F.3d 850, 858 (6th Cir. 2020) (quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 465 N.E.2d 1298, 1302 (Ohio 1984)) (internal quotation marks omitted). The complaint does not allege that Plaintiff conferred any benefit on Defendants.  In fact, it explicitly alleges that *Defendants* conferred a benefit upon themselves when they paid Plaintiff and class members less than they were owed under the contract by using the "challenged deduction."  (ECF No. 1-2, PageID #40).  A review of the pleadings reveals that Plaintiff does not allege, at any point, that he paid premiums to Defendants, or that any other benefit was conferred upon Defendant by *Plaintiff*.  Although Plaintiff notes that he paid premiums for insurance coverage in his opposition brief, no such allegation is contained within the pleadings themselves.  As such, Plaintiff has failed to state a claim for unjust enrichment.  Accordingly, Count II is **DISMISSED WITHOUT PREJUDICE**.

### 5.     Counts III and IV – Fraud Claims

Defendants argue that Counts III and IV are subject to dismissal because Plaintiff failed to meet the heightened pleading requirements for fraud claims under Fed. R. Civ. P. 9(b).  (ECF No. 11, PageID #163–65).  Specifically, they contend that the pleadings are insufficient because: (i) "Plaintiff vaguely asserts that the policy terms dealing with property payments and ACV are intentionally false without providing any factual support for this remarkable assertion"; and (ii) the complaint failed to identify the individuals who made the alleged fraudulent misrepresentations.  (*Id.* at PageID #164).  They separately argue that Counts III and IV are also

13

barred by the "economic loss doctrine." The Court will first address the arguments for dismissal as to Count IV before moving to Count III. For both Counts, the Court must first determine what specific claims are asserted in the complaint.

i.      Count IV

Count IV is labeled as "Fraud and Fraudulent/Negligent Misrepresentation and Omission." (ECF No. 1-2, PageID #42). Plaintiff generally alleges that Defendants either intentionally, recklessly, or negligently provided misleading information to Plaintiff by declining to define ACV in the Policy and failing to disclose a policy of applying a condition adjustment. (*Id.* ¶¶ 158–71). Plaintiff alleges these misrepresentations/omissions resulted in justifiable reliance and caused damages to Plaintiff. (*Id.* ¶¶ 170–74).

To the extent that Plaintiff intended to assert a negligent misrepresentation/omission claim, the claim fails. Under Ohio law, the elements of negligent misrepresentation are:

> (1) one who, in the course of his or her business, profession or employment, or in any other transaction in which he or she has a pecuniary interest; (2) supplies false information for the guidance of others in their business transactions; (3) is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information; and (4) if he or she fails to exercise reasonable care or competence in obtaining or communicating the information.

*Martin v. Ohio State Univ. Found.*, 139 Ohio App. 3d 89, 742 N.E.2d 1198, 1209 (Ohio Ct. App. 2000) (citing *Delman v. Cleveland Hts.*, 41 Ohio St. 3d 1, 534 N.E.2d 835, 837–38 (Ohio 1989)). Notably, "[a] negligent misrepresentation claim does not lie for omissions; there must be an affirmative false statement." *Id.* (citations omitted). Thus, Plaintiff cannot state a claim for negligent omission.

Courts have typically limited claims for negligent misrepresentation under Ohio law to certain professionals who are in the "business of supplying information to others" such as "attorneys, surveyors, abstractors of title and banks dealing with no-depositors' checks."

14

*Middlefield Banking Co. v. Deeb*, 2012-Ohio-3191, ¶35 (Ohio Ct. App. 2012) (internal quotation marks omitted); *see also Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 840–41 (6th Cir. 2012) (providing that the defendant in a negligent misrepresentation claim is typically a professional "who is in the business of rendering opinions to others for their use in guiding their business"); *Levy v. Seiber*, 2016-Ohio 68, 57 N.E.3d 331, 340 (Ohio Ct. App. 2016) (explaining that a negligent misrepresentation claim requires both a "defendant . . . in the business of supplying information" and that a "plaintiff seek guidance with respect to [a] business transaction, such as when there is a special relationship between the parties").  In other words, negligent misrepresentation is related to professional malpractice and requires a plaintiff to demonstrate that: (i) the defendant is in the business of supplying information; and (ii) the plaintiff sought guidance from the defendant with respect to a business transaction.  *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-CV-00018, 2006 U.S. Dist. LEXIS 83968, at *49–50 (N.D. Ohio Nov. 17, 2006) ("[T]his Court will not expand the tort into the realm of simple consumer transactions.  To do so would wholly remove a tort originally founded in concepts of professional liability from its foundations.").

Here, it is undisputed that the transaction between Plaintiff and Defendants was a standard consumer transaction.  The complaint contains no allegations that Defendants were in the "business of supplying information," that Plaintiff sought guidance from Defendants, or that there was any special relationship between Defendants and Plaintiff.  Thus, Plaintiff has failed to state a claim for negligent misrepresentation.

To the extent that Plaintiff asserts a claim for fraudulent misrepresentation/omission, this claim likewise fails.  A claim for fraud under Ohio law consists of the following elements:

(a) a representation, or, where there is a duty to disclose, a concealment of a fact,
(b) which is material to the transaction at hand, (c) made falsely, with knowledge

of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Ross v. PennyMac Loan Servs. LLC*, 761 F. App'x 491, 493 (6th Cir. 2019) (quoting *Burr v. Bd. of Cty. Comm'rs*, 23 Ohio St. 3d 69, 23 Ohio B. 200, 491 N.E.2d 1101, 1105 (Ohio 1986)); *see also Evon v. Walters*, 2021-Ohio-3475, ¶ 15 (Ohio Ct. App. 2021).  However, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) (interpreting Ohio law).  More specifically, "Ohio law does not recognize a tort claim premised upon the same actions as those upon which the plaintiff bases a breach of contract claim unless the plaintiff identifies some duty or misrepresentation by the breaching party independent of the contract."  *Davis Diamond Galerie, Inc. v. Silverman Jewelers Consultants, Inc.*, 106 F. App'x 341, 342 (6th Cir. 2004).

Under Count IV, Plaintiff cannot sustain a claim for fraudulent misrepresentation/omission because he has not identified any duty or misrepresentation independent of the contract itself.  Plaintiff is essentially attempting to recast his breach of contract claim as a fraudulent misrepresentation/omission claim.  Plaintiff's claim is premised entirely on alleged statements or omissions within the contract.  In cases like this, the Sixth Circuit has held that when "the causes of action in tort and in contract are factually intertwined, a plaintiff must show that the tort claims derive from the breach of duties that are independent of the contract and would exist by force of law notwithstanding the formation of the contract." *Academic Imaging, LLC v. Soterion Corp.*, 352 F. App'x 59, 65 (6th Cir. 2009) (interpreting Ohio law) (quoting *Cuthbert v. Trucklease Corp.*, 2004-Ohio-4417, ¶ 44 (Ohio Ct. App. 2004) (internal quotation marks omitted).  Plaintiff cannot make such a showing because the claims under Count IV would not exist without the formation of the contract at issue.

16

Thus, Plaintiff's fraud claims under Count IV must be dismissed for failure to state a claim. *See Davis Diamond Galerie, Inc.*, 106 F. App'x at 342; *Am. Colloid Co. v. Fire Star Energy Res.*, No. 3:22 CV 1342, 2024 U.S. Dist. LEXIS 116101, at *5 (N.D. Ohio June 6, 2024) (determining that a fraudulent misrepresentation claim "may not survive if it is based on the terms of the contract at issue in the underlying breach-of-contract claim"). Accordingly, Count IV is **DISMISSED**.

ii.     Count III

Count III is labeled as "Fraud by Present Intent Not to Perform." (*See* ECF No. 1-2, PageID #41). The pleadings do not provide any further clarification as to the specific claim asserted, but the present intent not to perform a promise can form the basis for both a claim of promissory fraud and fraudulent inducement. *King v. Hertz Corp.*, 1:09 cv 2674, 2011 U.S. Dist. LEXIS 35610, at *17 (N.D. Ohio Mar. 31, 2011) (citing *Langford v. Sloan*, 162 Ohio App. 3d 263, 268, 2005 Ohio 3735, 833 N.E.2d 331 (Ohio Ct. App. 2005)). Under Ohio law, a claim for promissory fraud occurs "when an individual makes a promise concerning future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise." *Williams v. Edwards*, 129 Ohio App. 3d 116, 717 N.E.2d 368, 374 (Ohio Ct. App. 1998); *see Coal Res., Inc. v. Gulf & W. Indus., Inc.*, 756 F.2d 443, 446 (6th Cir. 1985) ("[I]t is clear that making a contractual promise with no present intention of performing it constitutes promissory fraud in Ohio, . . ."); *Action Grp. Int'l, LLC v. AboutGolf, Ltd.*, No. 3:10CV2132, 2011 U.S. Dist. LEXIS 46133, at *25 (N.D. Ohio Apr. 29, 2011) ("But a plaintiff may prevail on a claim of promissory fraud by proving the defendant made a promise without the present intention of performing it."). By contrast, "[a] claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation." *Captiva, Inc. v. Viz*

*Commc'ns, Inc.*, 85 F. App'x 501, 505 (6th Cir. 2004) (citing *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 1998 Ohio 612, 692 N.E.2d 574, 578 (Ohio 1998)).

The claims in Count III are not subject to the same grounds for dismissal as the claims in Count IV. "A plaintiff can maintain a tort claim for fraud in the inducement or promissory fraud occurring in the contractual relationship because both theories raise separate and independent legal duties that are considered outside the scope of the contract." *King*, 2011 U.S. Dist. LEXIS 35610, at *8–9 (citing *Integrated Molding Concepts, Inc. v. Stopol Auctions*, 1:07 CV 2617, 2007 U.S. Dist. LEXIS 75646, at *16–18 (N.D. Ohio 2007). "This is because the focus of the wrongful conduct in a fraud in the inducement or promissory fraud claim is not the conduct that causes a contractual or promissory breach, but the intent of the tortfeasor, at the formation of the contract or promise, to defraud the other party into entering into the agreement." *Id.* at *9 (citing *Link v. Leadworks Corp.*, 79 Ohio App. 3d 735, 742–44 (Ohio Ct. App. 1992)).

To the extent that Plaintiff intended to assert a fraud in the inducement claim, that claim fails. The Ohio Supreme Court has explained that a claim of fraudulent inducement "asserts that a misrepresentation of facts *outside the contract or other wrongful conduct* induced a party to enter into the contract." *ABM Farms, Inc.*, 692 N.E.2d at 578 (emphasis added); *see also Res. Title Agency, Inc. v. Morreale Real Estate Servs.*, 314 F. Supp. 2d 763, 774 (N.D. Ohio 2004). "In other words, the claim involves some *collateral misrepresentation* designed to induce the plaintiff to enter into the contract." *Aero Fulfillment Servs. Corp. v. Oracle Corp.*, 186 F. Supp. 3d 764, 775 (S.D. Ohio 2016) (citing *Wall v. Planet Ford, Inc.*, 159 Ohio App. 3d 840, 2005 Ohio 1207, 825 N.E.2d 686, 694 (Ohio Ct. App. 2005). "Ohio and federal courts addressing this issue often find that a fraudulent inducement claim cannot succeed if the alleged misrepresentation is a contractual provision itself. . . . even if the plaintiff alleges a present

18

intention not to perform." *Little Mt. Precision, LLC v. DR Guns, LLC*, No. 22 CV 1471, 2023 U.S. Dist. LEXIS 21665, at *16 (N.D. Ohio Feb. 8, 2023) (citing *Dayton Children's Hospital v. Garrett Day*, LLC, 2019-Ohio 4875, 149 N.E.3d 1004 (Ohio Ct. App. 2019)); *id* at *18 (collecting cases).

Under Count III, Plaintiff makes no allegations about misrepresentations of facts outside the contract; instead, he implies that the misrepresentations at issue are related entirely to statements and representations made in the Policy as to how the ACV of a damaged vehicle will be calculated. Accordingly, Plaintiff cannot sustain a claim for fraud in the inducement.

To the extent that Plaintiff intended to assert a claim for promissory fraud, the claim also fails. Both promissory fraud and fraud in the inducement claims require a plaintiff to plead the same elements for all other fraud claims under Ohio law: (i) "a representation, or, where there is a duty to disclose, a concealment of a fact"; (ii) "which is material to the transaction at hand"; (iii) "made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred"; (iv) "with the intent of misleading another into relying upon it"; (v) "justifiable reliance upon the representation or concealment", and (vi) "a resulting injury proximately caused by the reliance." *Franco Marine 1, LLC v. Great Lakes Towing Co.*, No. 1:17CV2506, 2018 U.S. Dist. LEXIS 99982, at *15 (N.D. Ohio June 14, 2018) (citing *Chem. Bank of New York v. Neman*, 52 Ohio St. 3d 204, 208, 556 N.E.2d 490 (Ohio 1990)) (promissory fraud); *see also Kettering Adventist Healthcare v. Jade Designs, LLC*, 677 F. Supp. 3d 735, 749 (S.D. Ohio 2023) (fraud in the inducement).

"Where a complaint contains allegations of fraud, the plaintiff must also meet the heightened pleading standard set forth under Rule 9(b)." *Roden v. Schlichter*, No. 20-3466, 2021 U.S. App. LEXIS 4562, at *5 (6th Cir. Feb. 17, 2021) (citing *Heinrich v. Waiting Angels*

*Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012)).  Under Federal Rule of Civil Procedure 9(b), a plaintiff asserting a claim of fraud is required to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Within the context of the liberal pleading standard under Fed. R. Civ P. 8, the purpose of Rule 9(b)'s heightened pleading standard is to "provide defendants with more specific notice "as to the particulars of their alleged misconduct."  *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007).  Thus, to plead fraud with sufficient particularity, "a plaintiff must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud."  *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014) (citing *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)).

Plaintiff did not provide sufficient allegations of fact to plausibly support a claim for promissory fraud.  Under Count III, the complaint identifies the alleged fraudulent misrepresentation (the provision of the Policy requiring payment of ACV less deductible for total loss) and alleges that: (i) Defendants had fraudulent intent (the present intent to not abide by the Policy and apply a condition adjustment); and (ii) the foregoing resulted in harm to Plaintiff. (ECF No. 1-2, ¶¶ 155–57).  However, there are no allegations concerning reliance as to the claims under Count III—a required element for a claim of promissory fraud.[5]  *See Franco Marine 1, LLC*, 2018 U.S. Dist. LEXIS 99982, at *15.

Moreover, the pleadings do not sufficiently allege damages to support a claim of promissory fraud.  Ohio law requires that "fraud damages be limited to the injury actually arising from the fraud.  The tort injury must be unique and separate from any injury resulting from a breach of contract."  *Medical Billing, Inc. v. Medical Management Sciences, Inc.*, 212 F.3d 332,

---

[5] The lack of reliance allegations similarly dooms any purported claim for fraud in the inducement.

338 (6th Cir. 2000) (citing *Davison Fuel & Dock Co. v. Pickands Mather & Co.*, 54 Ohio App. 2d 177, 376 N.E.2d 965, 968 (Ohio Ct. App. 1977)).  The damages alleged under Count III are not separate and distinct from those attributable to the breach of contract claim under Count I. Plaintiff alleges damages "in the amount of the reduction of their payment by the improper deduction"—damages entirely attributable to, and recoverable under, the breach of contract claim.  (ECF No. 1-2, ¶ 157).  He then alleges that there are damages outside of "losses typical for breach of contract," stating that plaintiff and class members suffered: (i) "costs and expense incurred by them"; and (ii) attorney fees.  The Court finds the allegations that Plaintiff suffered "costs and expenses" from the alleged promissory fraud to be wholly conclusory and unsupported.  The complaint does not allege facts to support a plausible claim that Defendants' present intent not to abide by the alleged ACV calculation provisions in the Policy resulted in costs and expenses outside of those that are attributable to the breach of contract.  There are no allegations in the pleadings that Plaintiff was induced to enter into the contract based on the ACV calculation provisions (the alleged fraudulent statement) or that he suffered any reliance injuries (*e.g.*, lost opportunity costs).

As for attorneys' fees, those are again recoverable under the breach of contract claim. Additionally, attorneys' fees alone are insufficient to satisfy the injury requirement for a fraud claim under Ohio law.  *MISC Berhad v. Advanced Polymer Coatings, Inc.*, No. 1:14 CV 1188, 2014 U.S. Dist. LEXIS 165070, at *7–8 (N.D. Ohio Nov. 24, 2014) (determining that, after conducting research, attorneys' fees alone could not meet the injury element of a fraud claim because "Ohio follows the 'American Rule' that 'attorney's fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefore.'" (quoting *Nottingdale Homeowners' Ass'n v. Darby*, 33 Ohio St. 3d 32, 34, 514 N.E.2d 702 (Ohio 1987)).

Accordingly, Plaintiff has failed to plead sufficient facts to sustain a claim for fraud under Count III.  Count III is hereby **DISMISSED** for failure to state a claim.[6]

      *6.*     *Time-Barred Class Claims*

Defendants argue that Plaintiff's class definition is overly broad and likely encompasses many claims that are barred by the statute of limitations because: (i) Plaintiff brought this suit on behalf of a putative class dating back fifteen years from the filing of the complaint; (ii) Counts I and II are subject to a six-year statute of limitations; (iii) Counts III and IV are subject to a four-year statute of limitations; and (iv) the Policy further limits the statute of limitations for Plaintiff's claims to one year.  (ECF No. 11, PageID #165–66).  Defendants state that the Court "should limit the putative class claims to those that are within the applicable contractual limitations period."  (*Id.* at PageID #166).  Plaintiff responds that Defendants' challenge to the scope of the class certification is premature and should be addressed during Rule 23 class certification proceedings.  (ECF No. 12, PageID #189–90).

It is unclear from Defendants' motion whether they are seeking to strike the class allegations or dismiss specific putative class claims as time-barred.  Furthermore, it is not entirely clear whether Defendants are specifically seeking to dismiss or strike all putative class claims based on a one-year statute of limitations or the statutory four-year or five-year statutes of limitations.  Given this uncertainty, Defendants' request to strike or dismiss the putative class allegations would be more appropriately and cleanly resolved in response to a motion for class

---

[6] Having dismissed both Counts III and IV on other grounds, the Court need not address Defendants' arguments concerning the economic loss doctrine.  Alternatively, the Court finds that the economic loss doctrine would not serve to bar Plaintiff's claims of fraud under Counts III and IV.  The Court is persuaded by the weight of authority in this district finding that the economic loss doctrine does not apply to intentional torts under Ohio law, including claims for fraud in the inducement and fraudulent misrepresentation.  *See, e.g.*, *Med. Mut. of Ohio v. AXA Assistance USA, Inc.*, No. 1:22-cv-1313, 2023 U.S. Dist. LEXIS 174427, at *26–28 (N.D. Ohio Sep. 28, 2023); *MRI Software, LLC v. Pac. Capital Mgmt.*, No. 1:15 CV 1268, 2016 U.S. Dist. LEXIS 49077, at *10–11 (N.D. Ohio Apr. 11, 2016); *Hodell-Natco Indus. Inc. v. SAP Am., Inc.*, No. 1:08-CV-02755, 2010 U.S. Dist. LEXIS 143144, at *31–36 (N.D. Ohio Sept. 2, 2010), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 59276 (N.D. Ohio June 2, 2011).

certification or in future motions for dismissal.  Accordingly, this portion of the Motion to Dismiss is **DENIED WITHOUT PREJUDICE**.

> ### B.    Motion to Compel Appraisal

Defendants move the Court to order the parties to submit to the Policy's mandatory appraisal provisions and either dismiss this action or stay proceedings pending the outcome of the appraisal.  (ECF No. 11, PageID #155–56).  Defendants argue that AFCIC made an appraisal demand as authorized under the Policy, appraisal provisions are valid and enforceable under Ohio law, and federal courts have compelled appraisal in circumstances similar to those presented in this case.  (*Id.*).  Plaintiff responds by arguing that: (i) Plaintiff's vehicle has already been appraised; (ii) the issue in this case is a question of law that cannot be resolved by or submitted to appraisal; and (iii) appraisal is not mandatory under Ohio law.  (ECF No. 12, PageID #191–94).

As to Plaintiff's first argument, his vehicle has not yet been appraised pursuant to the "Right To Appraisal" provision of the Policy—the appraisal that Defendants now seek to compel in the instant motion.  Plaintiff's third argument is unpersuasive because, while appraisal might not be mandatory under Ohio law, Ohio courts have held that appraisal provisions like the one in the Policy are valid and enforceable.  *See Westview Vill. v. State Farm Fire & Cas. Co.*, No. 1:22-cv-0549, 2022 U.S. Dist. LEXIS 150500, at *3 (N.D. Ohio Aug. 22, 2022) ("Parties may enforce appraisal provisions under Ohio law") (citing *Saba v. Homeland Ins. Co. of Am.*, 159 Ohio St. 237, 112 N.E.2d 1, 3 (Ohio 1953)); *Bobel v. Safeco Ins. Co.*, No. 18CV245, 2018 U.S. Dist. LEXIS 240663, at *3 (N.D. Ohio May 9, 2018) (same).[7]

---

[7] Plaintiff's citations to *Fire Ass'n of Phila. v. Agresta* are unavailing because that court was not considering the enforceability of an appraisal provision but determining whether a party's untimely request for an appraisal could retroactively impose a condition precedent to suit.  *See* 115 Ohio St. 426, 154 N.E. 723, 725 (Ohio 1926).

The Court finds Plaintiff's remaining argument against compelling appraisal unpersuasive as well. Plaintiff maintains that appraisal is unwarranted because an appraisal cannot resolve the sole legal issue in this case: whether the application of a condition adjustment is permitted under the Policy. (ECF No. 12, PageID #192–93). Plaintiff attempts to characterize this action as one solely concerning the interpretation of the Policy and whether the use of a condition adjustment is permitted. This case is ultimately a dispute over the amount of money owed to Plaintiff under the Policy (a classic loss claims dispute). Plaintiff is asserting that Defendants paid less than the ACV of Plaintiff's damaged vehicle, in violation of the Policy. The condition adjustment was used as part of the calculation of the ACV, and the payout to Plaintiff, as evidenced by the Market Valuation. (*See* ECF No. 1-2, PageID #81–82, 87). Plaintiff disputes the use of the condition adjustment because he believes that it results in a loss amount that does not properly reflect the ACV of the vehicle. As such, the crux of this dispute is about the amount of loss.

Because the parties ultimately dispute the amount of the ACV of Plaintiff's vehicle, the Court finds that compelling appraisal would not be useless in this matter. Courts have rejected similar attempts by plaintiffs who challenge the use of a condition adjustment in the insurance company's valuation method and oppose appraisal as unwarranted. *See, e.g.*, *Enger v. Allstate Ins. Co.*, 407 F. App'x 191, 193 (9th Cir. 2010) ("By the plain language of the insurance policy, it is immaterial that Enger believes the cause of the disagreement concerning the actual cash value is Allstate's alleged use of an improper valuation method. . . . Until an appraisal is completed, it is impossible to know whether Enger's claim in fact was undervalued, such that her claims for breach of contract, [and] breach of the covenant of good faith and fair dealing, . . . are viable."); *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, No. 18-62059, 2019 U.S. Dist. LEXIS

44118, at *11 (S.D. Fla. Mar. 15, 2019) (collecting cases), *report and recommendation adopted in part, rejected in part*, 2019 U.S. Dist. LEXIS 181090 (S.D. Fla. Aug. 6, 2019); *Fortson v. Garrison Prop. & Cas. Ins. Co.*, No. 1:19CV294, 2019 U.S. Dist. LEXIS 187036, at *6–7 (M.D.N.C. Oct. 29, 2019) (finding appraisal appropriate despite the plaintiff's contention that she was not challenging her vehicle's valuation but only the right to deduct a condition adjustment from the payment to the plaintiff); *accord Schmidt v. State Farm Mut. Auto. Ins. Co.*, No. 22-12926, 2024 U.S. Dist. LEXIS 63349, at *7–9 (E.D. Mich. Apr. 5, 2024).

Moreover, the cases cited by Plaintiff to support denying appraisal are distinguishable. Both *McPheeters v. United Servs. Auto. Ass'n*, No. 1:20-cv-414, 2020 U.S. Dist. LEXIS 150965, at *3–5 (S.D. Ohio Aug. 20, 2020), and *Ostendorf v. Grange Indem. Ins. Co.*, No. 2:19-CV-1147, 2020 U.S. Dist. LEXIS 5163, at *12–13 (S.D. Ohio Jan. 13, 2020), did not involve disputes concerning the total loss amount, but presented challenges as to scope of coverage, ambiguity in the language of the polices, and whether the policies at issue required the payment of sales tax.  Here, the parties do not dispute the definition of ACV.  They dispute the total loss amount and whether a condition adjustment can be used when calculating the ACV.  As for *Ngethpharat v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 3d 908 (W.D. Wash. 2020), another case cited by Plaintiff, that case is distinguishable because the plaintiff in that case did not challenge the amount of the relevant deduction, but instead challenged only the legality of the deduction under state statute.  *Id.* at 919.

The Policy gives either party the right to demand an appraisal of the loss.  (ECF No. 1-2, PageID #61).  AFCIC submitted a written request for an appraisal of the loss amount to Plaintiff, citing to the "Right to Appraisal" under the Policy.  (ECF No. 11-1, PageID #170–71 ("This letter serves as Allstate's written demand for an appraisal of the insured's loss, pursuant to the

terms of his Auto Policy with Allstate, . . .").  The Policy provides that the appraisal process will result in a determination of the ACV and the amount of the loss for the damaged vehicle, which are questions of fact that fall within the scope of the Policy's appraisal provision.  (ECF No. 1-2, PageID #61–62).  In accordance with the Policy, Plaintiff must participate in an appraisal to determine the loss amount because AFCIC has exercised its right to demand an appraisal when the parties are in disagreement over the amount of loss.  The language in the Policy concerning appraisal is clear and unambiguous, and it is therefore enforceable.  Accordingly, the Court **GRANTS** Defendants' motion to compel appraisal and **STAYS** this action until the appraisal is completed.

## IV.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

1. Defendants' Motion to Dismiss (ECF No. 11) is **GRANTED IN PART AND DENIED IN PART**;

2. Defendant Allstate Insurance Company is **DISMISSED WITHOUT PREJUDICE** as a defendant in this action**;**

3. Counts II, III, and IV are **DISMISSED** for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6);

4. The Motion to Dismiss is **DENIED** as to Count I;

5. Defendants' request to compel appraisal is **GRANTED** and Plaintiff is instructed to comply with the appraisal provisions within the Policy;

6. This action is **STAYED** pending completion of the appraisal and the parties shall notify the Court immediately upon completion of the appraisal process.

**IT IS SO ORDERED.**

Date: September 9, 2024

_____
**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**